Attorney General Loving has asked that I respond to your request for an opinion asking, in effect:
 Does Title 2 O.S. 3-82 (1991) prohibit a contractor, not holding a commercial applicators license, from bidding on and securing a commercial contract for the application of pesticide and then sub-contracting with a licensed applicator for the performance of the work?
 The discussion which follows is not an official opinion of the Attorney General. Rather, the following analysis and conclusions, while solely my own, have been reached after careful research of the question you have raised.
I. Statutory Licensing Provisions
 The statutory licensing provisions relating to pesticide applicators is found at 2 O.S. 3-81, et seq. Specifically, 2 O.S. 3-82(A) states in relevant part, as follows:
 "It shall be unlawful and a misdemeanor for any person to act, operate, or do business or advertise as a commercial, noncommercial or private applicator unless such person has obtained a valid applicator's license issued by the Board for the category of pesticide application in which the person is engaged."
Additionally, it should be noted that under Oklahoma law, a license from the Department of Agriculture is required of all three types of applicators, commercial, noncommercial and private. 2 O.S. 3-82.
The Act also contains definitions of private applicator which are generally limited to instances in which a person is producing any agricultural commodity on property owned or rented by the person or his employer. 2 O.S. 3-81(16) (1991). Noncommercial applicator, as defined in the Act, is limited to persons, other than commercial or private applicators, who use or supervise the use of a restricted use pesticide under the supervision of a person who owns or manages the property, and who has been certified to be competent by the Board of Agriculture with respect to the use and handling of restricted use pesticides. 2 O.S. 3-81(17) (1991).
"Commercial applicator" is defined as follows:
 "Commercial applicator means any person who engages in commercial application of pesticides or commercial employment of devices. Any farmer while working for his neighbor in agriculture production on neighboring land, and not advertising, nor holding himself out to be in the business of applying restricted use pesticides, shall not be classified as a commercial applicator." 2 O.S. 3-81(12)
The term "device" is defined at 2 O.S. 3-81(28) as follows:
 "Device means any instrument or contrivance subject to the United States Environmental Protection Agency regulation intended for trapping, destroying, repelling, or mitigating insects or rodents, or mitigating fungi, bacteria or weeds, or such other pests as may be designated by the Board, but not including equipment used for the application of pesticides when sold separately therefrom."
"Commercial application" is defined as "the advertising of services, recommendation for use, the preparation for application and physical act of application of a pesticide or employment of a device for hire or compensation." 2 O.S. 3-81(11). Thus, whether the conduct of bidding upon and receiving a contract for the application of pesticide, and subcontracting with a licensed applicator for the performance of the work is prohibited depends upon the totality of the circumstances and a comparison with the above definitions of commercial applicator and commercial application.
Since 2 O.S. 3-82 is of a penal nature, classifying certain conduct as a misdemeanor, the statute must be construed narrowly. Penal statutes are to be interpreted strictly against the State and liberally in favor of the accused, and words not found in the text of a criminal statute should not be read into it for the purpose of extending it or giving it an interpretation in conformity with supposed policy. State v. Humphrey. 620 P.2d 408 (Okl.Cr.1980). Additionally, there do not appear to be any reported cases construing the Oklahoma laws relating to licensure of pesticide applicators.
II. Commercial Pesticide Applicators Under Oklahoma Law
Applying the above definitions to your inquiry, it appears that the conduct of bidding on the contract takes this situation outside the definitions of both "private" and "noncommercial" applicators, since it involves neither the land of the person applying the pesticide nor the supervising of a person who owns or manages the property upon which pesticide is being applied. Further examination is required to determine whether this conduct is covered by the term "commercial applicator.N The statutory definition of "commercial applicator" is clear in delineating those persons that must obtain a license from the State Board of Agriculture as persons who engage in commercial application of pesticides or commercial employment of devices.
The term "commercial application" is defined as:
 "The advertising of services, recommendation for use, the preparation for application and physical act of application of a pesticide or employment of a device for hire or compensation." 2 O.S. 3-81(11)
Since this list defines the actions of a commercial applicator to be regulated by 3-82(A), we must examine it closely. Though we must strictly construe statutes of a criminal nature, it appears that the conduct described in your inquiry fits within these activities, and thus is a violation of 3-82.
It would appear that bidding on and securing a commercial contract for the application of pesticide is conduct of a commercial nature, done for the purpose of increasing monetary gain. The actions you describe seem to fall under the definition of advertising. Advertising is not defined in the Act, therefore we must use the commonly accepted definition of the term. Advertising is "to call the public's attention to things for sale or rent, help wanted, etc., as by printed notices, or to ask (for) publicly by printed notice.N Webster's New World Dictionary, p. 20 (2nd ed. 1980).
Thus, since advertising of services without a commercial applicator's license is within the prohibited acts, and since the activities described in your inquiry appear to fit within the commonly accepted definition of advertising, the conduct of bidding on and securing a commercial contract for the application of pesticide and sub-contracting with a licensed applicator for the performance of the work is prohibited by 2 O.S. 3-82 (1991).
Conclusion
It is, therefore, the opinion of the undersigned attorney that the determination of whether particular conduct violates this statute would ultimately be made by the District Attorney in and for the county where the pesticide application occurred, since this would be a prosecution for a criminal act under 2 O.S. 3-82(A) (1991). That determination involves not only whether a violation has occurred, but the relative strength of the evidence, intent of the parties, and other circumstances not addressable within an Attorney General Opinion.
(Glen D. Hammonds)